

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*86 Chambers Street*
*New York, New York 10007*

October 15, 2019

**VIA ECF**
Honorable Katherine Polk Failla
United States District Judge
United States District Court
40 Foley Square
New York, NY 10007

      Re:    <u>Rodriguez v. City of New York, et al.</u>, 18 Civ. 1001 (KPF)

Dear Judge Failla:

      This Office represents defendants Louis DeMarco ("DeMarco") and Keith DeGiorgio ("DeGiorgio") (jointly, "Defendants") in their individual capacities in the above-captioned *Bivens* matter. In accordance with Rule 4.A of Your Honor's Individual Practices and the Court's order dated September 30, 2019 [Dkt. No. 49], I write respectfully to request a pre-motion conference to discuss Defendants' anticipated motion for summary judgment. Defendants have been unable to obtain plaintiff Mario Julio Rodriguez's ("Rodriguez") position with respect to their motion as of the writing of this letter. Moreover, immediately after Rodriguez's deposition on October 4, 2019, his counsel, Rudy Velez, Esq., informed me that he is considering withdrawing this matter. Accordingly, Defendants request that Mr. Velez confirm at the pre-motion conference whether he will execute a stipulation to voluntarily withdraw this case pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii), so that Defendants do not unnecessarily expend time and resources preparing and filing their summary judgment motion and supporting papers.

**A.    Background**

      Rodriguez's *Bivens* action for false arrest arises out of his October 24, 2016 arrest for criminal possession of a controlled substance in the first degree. N.Y. Penal Law § 220.21. At all times relevant to this action, defendant DeMarco was a detective with the New York City Police Department ("NYPD") and was a deputized Task Force Officer with the United States Drug Enforcement Administration ("DEA"). Defendant DeGiorgio was a sergeant with the NYPD and was also a deputized DEA Task Force Officer. Both defendants were members of what was known as "DEA Task Force-85" at all times relevant to this action.

      On or around October 17, 2016, a DEA confidential informant ("CI-1") informed NYPD Detective Sergio Alvarez ("Alvarez"), another member of DEA Task Force-85, that an individual named "Julio" (later revealed to be Plaintiff) told CI-1 that he would provide CI-1 with cocaine. CI-1 had worked with DEA since 2006, and was known to be a reliable informant who provided DEA with information that led to the arrest of at least 100 individuals. On three occasions in mid-October, CI-1 met with Rodriguez in person to discuss possible narcotics

transactions and reported the substance of his conversations to the DEA. CI-1 also spoke with Rodriguez over the telephone to discuss a possible narcotics transaction and reported the substance of his conversation to the DEA.  On October 21, 2016, DeMarco successfully obtained an order from the Supreme Court of the State of New York, Special Narcotics Court, to install an electronic tracking device on Rodriguez's car, a black 2016 Toyota Camry.  The court order notably found "there is probable cause to believe that [Rodriguez's] vehicle will be used to commit the crimes of Criminal Possession and Sale of Controlled Substances and Conspiracy to commit those crimes."  That same day, the DEA surreptitiously attached the tracking device to Rodriguez's car and recorded the vehicle's movements until Rodriguez's arrest on October 24, 2016.

On or about October 23, 2016, CI-1 informed Alvarez that Rodriguez wanted to meet with CI-1 to discuss a possible narcotics transaction.  The DEA brought in a second confidential informant ("CI-2") to participate in the meeting and act as an interested buyer for the drugs.  On October 24, 2016, CI-1, CI-2 and Rodriguez met at a location near Rodriguez's residence in the Bronx, while six DEA officers, including DeMarco, DeGiorgio and Alvarez, were stationed in parked cars nearby.  At some point, CI-1 notified Alvarez that their meeting had ended, and that Rodriguez had driven away in his car to get drugs for CI-2.  Defendants, Alvarez, and the three other DEA officers started following Rodriguez's car.  The officers observed Rodriguez drive over the George Washington Bridge in the black 2016 Toyota Camry and stop at a gas station in Fort Lee, New Jersey.  The officers also observed Rodriguez put up the hood of his car and pour antifreeze into his car for about 20 minutes.  Rodriguez then left Fort Lee and drove to an Autozone at 289 Bergen Boulevard in Fairview, New Jersey, with the officers following close behind.  The officers observed Rodriguez park his car in front of the Autozone sometime after 10 p.m., where he again put antifreeze in his car and appeared to be waiting for someone to arrive.  After about 30 minutes, a white Acura drove up next to Rodriguez's car.  The DEA officers saw the driver of the Acura go to the rear door on the driver's side, take out a package, and hand the package to Rodriguez.  Rodriguez put the package in the trunk of his car.

The DEA officers followed Rodriguez's car back to New York.  The officers initiated a traffic stop off the side of the Major Deegan near Fordham Road.  Rodriguez verbally consented to having the officers search his car and the package inside the trunk, which appeared to be a two-foot long, sealed cardboard box.  When the officers asked Rodriguez what was in the box; Rodriguez claimed he did not know.  The officers found 4 kilograms of cocaine wrapped in black tape and heat-sealed in plastic.  At DEA's New York Division office in Manhattan, Rodriguez waived his *Miranda* rights and wrote a statement claiming that he was dispatched to pick up some "girls" at a location in New Jersey, but upon arrival at the location, saw that there were no girls.  Rodriguez's dispatcher allegedly told Rodriguez that he would be picking up a box instead and delivering it to New York.  At his deposition, Rodriguez admitted that on October 24, 2016, he drove to Fort Lee, New Jersey and then to 289 Bergen Boulevard in Fairview, New Jersey in his black 2016 Toyota Camry, encountered a driver in a white car while he was parked in Fairview, and accepted a cardboard box from the driver, but claimed he never

touched the box nor knew that the box contained cocaine.  On November 29, 2016, a grand jury issued a "no true bill" against Rodriguez.

**B.     Argument**

"The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest . . . ."  *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (citation omitted).  "Probable cause to arrest exists when the officers have knowledge of, or reasonably trustworthy information as to, facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested."  *Zellner v. Summerlin*, 494 F.3d 344, 368-69 (2d Cir. 2007) (citations omitted).  In addition, "[p]robable cause is to be assessed on an objective basis [and] 'depends on the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest.'"  *Id.* at 369 (quoting *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004)).  Probable cause is also determined based upon the collective or imputed knowledge of all officers involved in a criminal investigation.  *Id.*

Considering all the information known to Defendants before they arrested Rodriguez, Defendants had sufficient probable cause to make the arrest.  The undisputed evidence establishes that a reliable confidential informant had several interactions with Rodriguez where they discussed possible narcotics transactions, and that Rodriguez agreed to procure drugs for a second confidential informant who was posing as a buyer.  *See United States v. Wagner*, 989 F.2d 69, 73 (2d Cir. 1993) (holding that a confidential informant's "participation in supervised drug purchases is powerful corroborative evidence for the purposes of determining probable cause") (citations omitted).  In addition, a state court found there was probable cause that Rodriguez was likely to commit drug-related felonies and authorized the attachment of a surveillance device to his car.  On the night of his arrest, Defendants and four other officers observed Rodriguez driving from the Bronx to two locations in New Jersey, and saw him seemingly waiting for someone to arrive at both locations while he repeatedly poured antifreeze in his car.  Finally, Rodriguez was observed accepting a box from an individual that was later found to contain 4 kilograms of cocaine.  The facts that Rodriguez protested his innocence and wrote a statement asserting that he intended to pick up some "ladies" or "girls" and instead ended up with a box whose contents were unknown to him do not vitiate probable cause in light of the other information known to Defendants.  "[A] showing of probable cause cannot be negated simply by demonstrating that an inference of innocence might also have been drawn from the facts alleged."  *Walczyk v. Rio*, 496 F.3d 139, 157 (2d Cir. 2007).  An arresting officer "is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest," and "the fact that an innocent explanation may be consistent with the facts alleged . . . does not negate probable cause."  *Panetta v. Crowley*, 460 F.3d 388, 395-96 (2d Cir. 2006) (internal citations and quotation marks omitted)).

We thank the Court for its consideration of this letter.

                          Respectfully submitted,

                          GEOFFREY S. BERMAN
                          United States Attorney
                          *Counsel for Defendants*

By:    */s/ Tomoko Onozawa*
                          TOMOKO ONOZAWA
                          Assistant United States Attorney
                          Tel: (212) 637-2721
                          Fax: (212) 637-2686
                          Email: tomoko.onozawa@usdoj.gov

cc:    (via ECF)
       Rudy Velez, Esq.